Gilroy v. Letterman et al    Doc. 1 Att. 4

Plaintiff's Home, Interference with Plaintiff's Right to Earn a Living, among all other illegal activities described herein which were perpetrated against the Plaintiff, Plaintiff demands that this Court demand Defendants pay Interest of 12%, compounded annually, to Plaintiff of the above referred to Six Million ($6,000,000) Dollars to arrive at an Interest Amount of Seven Hundred and Twenty Thousand ($720,000) Dollars per Year in Interest.

1043. Plaintiff had begun Plaintiff's attempts to write above referred to Book during 1994, some 12 years before the filing of the herein referred to Lawsuit, Plaintiff demands Interest for each and every year during the past 10 Years, that is, from 1994 though 2004.

1044. If Defendants' had not violated Plaintiff's Constitutional Rights, including but not limited to, Invasion of Plaintiff's Privacy, being involved in a Conspiracy to Invade Plaintiff's Privacy, employing other Individuals to become guilty of Breaking and Entering into Plaintiff's home, employing other Individuals to steal computer disks within which were typed Plaintiff's Book, Plaintiff hereby demand that the Court order Defendants to pay Plaintiff Interest for the past 10 Years at 12% Interest, Compounded Annually.

1045. Plaintiff demands that Court order Defendants to pay to Plaintiff Total Interest in the Amount of Seven Million and Two Hundred Thousand ($7,200,000) Dollars to date.

1046. If the Court adds Financial Losses suffered by Plaintiff due to the theft of Plaintiff's Book from Plaintiff's home in the Total Amount of Six Million ($6,000,000) Dollars, and other occurences which interferred with Plaintiff's attempts to write said Book, to the Total Amount of Interest at 12% of during the past 10 Years, Compounded Annually, of Seven Million and Two Hundred Thousand ($7,200,000) Dollars to date
Plaintiff hereby demands that the Court order Defendants named herein to pay to Plaintiff the Total Amount of Thirteen Million Two Hundred Thousand ($13,200,000) Dollars, plus Attorney Fees and Court Costs.

1047. Plaintiff makes reference to and incorporates New Hampshire Laws Annotated, Federal Laws, U.S. Constitution, as applicable.

Dockets.Justia.com

122

# COUNT XII

## VIOLATION OF CONSUMER PROTECTION LAW

## as UNFAIR AND DECEPTIVE PRACTICES

1048. Plaintiff realleges paragraphs 1 through 1,047 above and incorporates them by reference as if stated herein.

1049. Defendants willfully, deceptively and maliciously Invaded Plaintiff's Privacy, commit Surveillance of Plaintiff, committed Theft of Plaintiff's Intellectual Property, Harassed Plaintiff, caused Defamation of Character of Plaintiff, Intentionally Inflicted Emotional Harm to Plaintiff, Interferred with the Quiet Enjoyment of Plaintiff, Failed to discontinue said illegal activities against Plaintiff after having been notified several times in writing to do so, caused Alienation of Affection to Plaintiff from Plaintiff's family members, in violation of Consumer Protection Law.

1050. Defendants willfully, deceptively and maliciously had been involved in a Conspiracy to Invade Plaintiff's Privacy, in addition to all other illegal activities referred to above and in all Counts herein, in violation of Consumer Protection Law.

1051. The Defendants illegally committed and were responsible for Surveillance perpetrated against Plaintiff in Plaintiff's Home, car, home office and Painting Studio in Plaintiff's home, in addition to all environments to which Plaintiff had visited, said Surveillance of Plaintiff and all of Plaintiff's activities, having continued during innumerable years, in violation of Consumer Protection Law.

1052. Plaintiff refers to each and every Statement referred to in each and every Count herein by Defendants and by Co-Conspirators of Defendants to demonstrate Defendants' illegal actions perpetrated against Plaintiff, and to demonstrate that Defendants have been guilty of each and every Count referred to herein, in violation of the Consumer Protection Law.

1053. The Defendants' illegal activities and actions were committed against the Plaintiff during numerous years <u>without Plaintiff's consent or permission</u>, neither written, verbal or implied consent or permission, for doing so during numerous years, for said illegal actions ongoing to date, and, in fact, without Plaintiff's actual knowledge for numerous years, in violation of Consumer Protection Law.

1054. All herein activities of Defendants against Plaintiff or in regard to Plaintiff were illegal because Plaintiff is and was a <u>private Individual</u> and not a Public figure, in violation of Consumer Protection Law.

1055. All of the references herein to quotations made by Media personalities place all of the individuals referred to in the position of acting as co-conspirators; namely David Letterman, Craig Kilborne, Howard Stern, Charles Laquidara, and Mark Parento, among others.

1056. The Defendants committed willful, malicious and deceptive illegal activities which interferred with the Plaintiff's Constitutional Rights of Life, Liberty and the Pursuit of Happiness, thereby denying Plaintiff her Unalienable Rights as a United States Citizen, and for said illegal actions continuing during numerous years and ongoing to date, in violation of Consumer Protection Law.

1057. The Defendants willfully, deceptively and maliciously Interferred in Plaintiff's Constitutional Right to Privacy in that Defendants, directly or indirectly, invaded Plaintiff's Privacy, and were involved in a conspiracy to conduct Surveilance of Plaintiff and of Plaintiff's home, did so for numerous years, and continue to do so to date in violation of Consumer Protection Law.

1158. Defendants willfully, deceptively and maliciously had been involved in a Conspiracy because Defendants employed individuals to perpetrate illegal activities against Plaintiff, said individuals undeniably received benefits from Defendants in one form or another, said activities ongoing during numerous years, ongoing to date, in violation of Consumer Protection Law.

1059. All herein described Losses of Plaintiff have been due to the willful, deceptive and malicious illegal activities which Defendants perpetrated against Plaintiff, including but not limited to, Invasion the Privacy of the Plaintiff, Infringements of Plaintiff's Rights, Intentional Infliction of Emotional Harm and Harassment of the Plaintiff, in addition to the Involvement of Defendants in a Conspiracty to Invade the Privacy of the Plaintiff, among all other illegal activities described in all Counts herein which were perpetrated against the Plaintiff in violation of Consumer Protection Law.

1060. The Defendants illegal activities which the Defendants perpetrated against Plaintiff have cost innumeralbe millions of dollars of Financial Losses to Plaintiff, to Plaintiff's Family Members and to Plaintiff's Heirs, in addition to the Defendants having cost immeasurable amounts of Personal Losses to the Plaintiff, during each and every year during the past twenty to thirty years, the above ongoing to this date, in violation of Consumer Protection Law.

1061. The Defendants' illegal activities which they perpetrated against Plaintiff were particularly costly to Plaintiff in terms of Financial Losses to Plaintiff, and to Plaintiff's Family Members, during the years 1997, 1998, 1999, 2000, 2001, 2002, 2003 and 2004, and ongoing to this date, in violation of Consumer Protection Law.

1062. Charles Laquidara had stated "They have been trying for 20 years to get you and they finally did. And I am so glad they did," the statement clearly demonstrates the validity of Plaintiff's claims against the Defendants named herein, in violation of Consumer Protection Law.

1063. Charles Laquidara' statement clearly demonstrates Defendants intentions in regard to Invasion of Plaintiff's Privacy, in addition to all other illegal activities which Defendants perpetrated against Plaintiff, said intentions having been in violation of Consumer Protection Law.

1063. The Defendants committed direct attacks against Plaintiff and were involved with other Media Personalities in the herein referred to conspiracy to vicimize Plaintiff which have caused and continues to cause immeasurable harm, suffering, and irreversible damage to Plaintiff, in violation of Consumer Protection Law.

1064. Defendants interferred with Plaintiff's attempts to carry out Plaintiff's plans, and were involved in a Conspiracy to interfere with Plaintiff's attempts to carry out Plaintiff's plans because Defendants Invaded Plaintiff's Privacy and commit Surveilance of Plaintiff in Plaintiff's home, in addition to all enviroments which Plaintiff visited, in addition to all illegal activities referred to in all Counts herein, all without Plaintiff's permission, in regard to the following, all in violation of Consumer Protection Law.

   A. Plaintiff's attempted purchase of commercial real estate.
   B. Plaintiff's plans to earn a substantial profit as a result of said purchases.
   C. Damaging Plaintiff's professional career as a professional fine arts painter.
   D. Plaintiff's potential earning a substantial income in the potential sale of Plaintiff's paintings.
   E. Plaintiff's ability to continue to paint in Plaintiff's home which was also Plaintiff's art studio.
   F. Plaintiff's attempts to buy and sell stock in the Stock Market, thereby earning a potential
       substantial income in so doing, instead of leading Plaintiff to suffer the financial loss of
       nearly all available cash on hand (loss of $175,000 of $200,000 cash on hand).
   G. Interference by Defendants led to great financial losses to Plaintiff's son of two-thirds of his
       cash on hand, the loss of $2,000,000 of his previous $3,000,000 cash on hand.
   H. Interference by Defendants led to a second event of great financial losses to Plaintiff's
       son within six months, the loss of $600,000 of Plaintiff's son's remaining $1,000,000, leading
       to a balance of only $400,000 of Plaintiff's son's original $3,000,000 cash on hand.

125

1063. The Defendants illegally have broken numerous Constitutional Laws when Defendants persecuted and victimized Plaintiff, the illegal activities having been perpetrated because Plaintiff was a single woman and lived alone, thereupon causing Plaintiff to be a readily available Victim, in violation of Consumer Protection Law.

1065. Plaintiff hereby stipulates that no Private Citizen of the United States needs to live this way.

1066. For the absolute and total futility and waste of one Human Life and the ensuing Horror to Plaintiff of being forced to live such a life due to the constant Invasion of Plaintiff's Privacy during innumerable years and ongoing to date, in violation of Consumer Protection Law.

1067. Plaintiff hereby contends that all Defendants named herein are under the mistaken impression that they can Interfere with and Violate the Plaintiff's Constitutional Rights and / or with any other United States Citizen's Constitutional Rights simply because Defendants are in positions of Power, are wealthy, are therefore able to employ numerous individuals to assist them in their criminal activities, are threrefore able to utilize "State of the Arts" Surveilance Equipment, thereby causing it to be impossible for Plaintiff to find Surveilance Equipment or Methods and to obtain documentation of such Surveilance, in violation of Consumer Protection Law.

1068. Radio Stations, Television Stations, Media Personalities, Movie Personalities, and such are certainly persons of substantial means and certainly have access to equipment that is sufficiently sophisticated to be able to break into any private citizen's home and to be able to conduct surveillance upon any private citizen, should they desire to do so, in violation of Consumer Protection Law.

1069. No fine, no dollar penalty, no lawsuit is sufficient to penalize each and every Defendant herein named for their evil intentions and for their evil activities in regard to their attacks upon the Plaintiff, in violation of Consumer Protection Law.

1070. The herein referred to Summons and Complaint demonstrates that no United States Citizen is safe from the potential attacks of the Media, whether that Citizen is the Plaintiff or whether that Citizen is any other person who resides in the United States of America.

1071. The Defendants' intention, and of other Media Personalities with whom the Defendants were involved, had been to illegally draw attention to the Plaintiff, to illegally identify the Plaintiff to the Media Audience, to illegally victimize Plaintiff with the express willful intention of destroying Plaintiff's life, in violation of Consumer Protection Law.

1072.  Defendants vicimized Plaintiff with the express willful intention of keeping Plaintiff perpetually poor in order that Plaintiff would not be able to defend herself, and of keeping Plaintiff perpetually enslaved in order for Defendants and Defendants Conspirators to financially benefit from said enslavement, in violation of Consumer Protection Law.

1073.  The Defendants profitted greatly financially at Plaintiff's expense in the area of untold Millions of Dollars in Income, resulting from the Defendants commission of the illegal activities described herein, in one realm or another, in violation of Consumer Protection Law.

1074.  Plaintiff contends that Defendants were involved in a scheme to use Plaintiff as a "Guinea Pig", experimenting with Plaintiff without Plaintiff's knowledge or without Plaintiff's Consent because of Defendants' later involvement in what is now known as "Reality Television", often making statements throughout the years, such as "This is only a Test", a favorite expression of Charles Laquederias, and that Defendants are now earning tens of millions of dollars in annual income after having applied persecution upon Plaintiff for innumerable years, in violation of Consumer Protection Law.

1075.  Only individuals of substantial means would have been able to have unlawfully entered the Plaintiff's premises after all of the great lengths to which Plaintiff had gone to in order to preserve Plaintiff's Privacy from being Invaded, in violation of Consumer Protection Law.

1076.  Mark Parento had stated during 1999 on the WBCN radio program on which he was the disc jockey "It's a Twenty Year Tragedy," said statement demonstrates the degree to which Defendants have persecuted Plaintiff, in violation of Consumer Protection Law.

1077.  Mark Parento had stated during the 1999 on the WBCN radio program on which he was the disc jockey "Our Girl Stupid," which statement demonstrates that Plaintiff had been unaware that during some 20 or more years, Plaintiff's home had been under surveilance, and that Plaintiff's life had been being destroyed, in one realm or another, in violation of Consumer Protection Law.

1078.  Plaintiff had discussed some of Plaintiff's problems with the Media with a friend during 1987 and that the friend had stated to Plaintiff that "it had been rumored that Charles Laquedeiros had "Mafia involvement" and the friend further stated to Plaintiff "you had better be careful."

1079.  Within a few months, and immediately after Plaintiff had sent a telegram to Charles Laquidara at WBCN to discontinue his involvement in Plaintiff's life, Plaintiff had been pushed into a Nervous Breakdown during 1987 in violation of

127

Consumer Protection Law.

1080. The fact is that both Plaintiff's son and Plaintiff are far too intelligent for the above financial losses to have occurred, and could only have occurred because Plaintiff's Privacy had been invaded upon, and because Defendants had violated every Constitutional and State Law in their perpetration of illegal activities against Plaintiff.

1081. The quotations of statements made by the Defendants and other Media personalities demonstrate the Defendants' Invasion of Privacy of Plaintiff, the Defendants' Interference in all of Plaintiff's Activities and Life and Defendants' Defamation of Character of Plaintiff, among all other illegal activities referred to herein, during innumerable years, and ongoing to date, in violation of Consumer Protection Law.

1082. Numerous Threats had been made by Defendants against Plaintiff's Life and against Plaintiff's Financial Status, in violation of Consumer Protection Law.

1083. Charles Laquidara had stated, in obvious reference to the Plaintiff, during the end of March, 2000, and while Plaintiff had been attempting to buy and sell Stock on the Internet on <u>WZLX</u> radio program of which he was the disc jockey "He doesn't know what he is doing", in violation of Consumer Protection Law.

1084. When Charles Laquidara had stated on <u>WZLX</u> radio program of which he was the disc jockey in obvious reference to the Plaintiff, during the end of March, 2000, and while Plaintiff had been attempting to buy and sell Stock on the Internet "He doesn't know what he is doing," Plaintiff's son had invested Plaintiff's $200,000 Cash-on-Hand in the Stock Market for Plaintiff in NASDAQ Tech Stock.

1085. Plaintiff thereupon lost nearly all of her entire Life Savings of $200,000 which had been invested in the Stock Market during the first week of April, 2000 and that, at the same time, Plaintiff's son had lost $2,000,000 of his more than $3,000,000 of his Cash-on-Hand which had been invested in the Stock Market.

1086. Immediately thereafter Charles Laquadeiras stated, horrified, "She's going to die POOR", in violation of Consumer Protection Law.

1087. During months immediately after Plaintiff's son had invested Plaintiff's $200,000 in the Stock Market, Plaintiff spent numerous hours daily in following the Stock Market, in buying and selling stock on line via the Internet, in attempting to advise Plaintiff's son of current market conditions because Plaintiff's son had a heavy schedule in the Hospital Emergency Room.

1088. During the above referred to months while Plaintiff had daily spent numerous hours in following the stock market, Plaintiff could not concentrate on

128

important issues in regard to the Stock Market and in regard to Plaintiff's attempts to buy and sell stock, and in regard to Plaintiff's notifying Plaintiff's son of current Stock Market conditions because Defendants had been Invading Plaintiff's Privacy and had been committing Surveilance of Plaintiff, in violation of Consumer Protection Law.

1089. Additionally, Defendants interferred with Plaintiff's above attempts in regard to the Stock Market because Defendants had been involved in a Conspiracy to Invade Plaintiff's Privacy and had been Involved in a Conspiracy to commit Surveilance of Plaintiff, in violation of Consumer Protection Law.

1090. Additionally, every morning while Plaintiff had been attempting to follow the Stock Market and to buy and sell stock in the stock market, Plaintiff would receive telephone calls at approximately 9:00 a.m. to 9:30 a.m. to 10:00 a.m. every morning from individuals who had obviously been involved with the Defendants in a Conspiracy to Invade Plaintiff's Privacy, among all other illegal activities referred to in all Counts herein, in violation of Consumer Protection Law.

1091. Immediately, upon Plaintiff having received each and every interferring telephone call, Plaintiff would no longer be able to concentrate upon important stock market issues, thereby said Surveilance of Plaintiff immediately again having been brought to Plaintiff's attention, regardless of Plaintiff's super-human attempts to block out said Surveilance in order to continue Plaintiff's work in Plaintiff's home.

1092. Plaintiff discontinued receiving such interferring telephone calls every morning immediately upon Plaintiff and Plaintiff's son having lost enormous amounts of cash in the stock market.

1093. If Defendants had not Invaded Plaintiff's Privacy and had not commit Surveilance upon Plaintiff, had not been involved in a Conspiracy to Invade Plaintiff's Privacy and to commit Surveilance upon Plaintiff, in violation of Consumer Protection Law, Plaintiff and Plaintiff's son would not have suffered the above referred to losses in the Stock Market.

1094. Plaintiff's son thereupon sufferred enormously due to his terrible loss of income in the Stock Market and continued to suffer for some several years thereafter.

1095. Plaintiff thereupon sufferred enormously due to Plaintiff's loss of income in the Stock Market and continued to suffer for some several years thereafter.

1096. Several months later Plaintiff had been advised by an attorney that Charles Laquadeiras had "retired" after Stock Market Crash and after all Losses above to Plaintiff and Plaintiff's family and had been advised that he had moved to

129

"Hawaii".

1097. Plaintiff believes that Charles Laquidara may have been Fired in the Radio Station's attempt to remove themselves from blame.

1098. Plaintiff had sent a telegram to Charles Laquidara while he had been employed at WBCN radio as a disc jockey during the 1987, in order to be asured that he would receive the Plaintiff's message to him, Plaintiff having advised Charles Laquidara to discontinue interferring in Plaintiff's life, and that if he failed to discontinue interferring in Plaintiff's life that Plaintiff intended to bring a lawsuit against him and against WBCN.

1099. Charles Laquidara refused to honor Plaintiff's request that he stop interferring in Plaintiff's life, responded to his receipt of the above telegram (1987) by making the statement on WBCN radio the the day after receipt of the telegram "Sue me?  I'll sue you", in violation of Consumer Protection Law.

1100. Charles Laquidara responded to his receipt of the above telegram during 1987 by making the statement on WBCN radio "What about all of the other (Radio) stations?", in violation of Consumer Protection Law.

1101. Charles Laquidara made thousands upon thousands of statements on the air which pointed directly to the Plaintiff and which demonstrated that he had personal knowledge of all occurences in Plaintiff's life, in violation of Consumer Protection Law.

1102. Plaintiff had mailed a letter to David Letterman during February, 2003 in which Plaintiff requested that David Letterman discontinue all of his illegal activities and those illegal activities of members of his staff which were being perpetrated against Plaintiff, adding that Plaintiff would sue David Letterman and co-conspirators unless said illegal activies ceased.

1103. On February 10, 2003 Plaintiff had begun to prepare this lawsuit.

1104. On February 10, 2003 David Letterman had stated on the David Letterman Show "Our lawyers are tough lawyers, undeniably as a threat against Plaintiff to discontinue Plaintiff's attempted lawsuit, in violation of Consumer Protection Law.

1105. On February 10, 2003 David Letterman had stated during the David Letterman Show "You temperamental bitch," in violation of Consumer Protection Law.

1106. During December, 2003 David Letterman had stated "You don't know it, but you are on CNN," in violation of Consumer Protection Law.

1107. Defendant, a Host of Late Night Television, Craig Kilborne, made Threats against Plaintiff's Life in Public during the year 2003, for making said threats in Televised Broadcasts on Channel 4 Television before hundreds of thousands of Witnesses and members of the viewing audience, the intention of said Host being to intimidate Plaintiff from filing this lawsuit against Defendants, in violation of Consumer Protection Law.

1108. Craig Kilborne stated on October 25, 2003 at about 1:00 a.m. and towards the beginning of the nightly program on television Channel 4 "...(we) will call Grandma on the telephone and ask her to meet us at the parking lot for a "Settlement. ..." "... Instead,..." (we)"... will bring a (lead) Pipe...", in violation of Consumer Protection Law.

1109. While Craig Kilborne stated the above, Craig Kilborne thrust his arms outward and about in slashing motions, such as if a person were attacking another person with a weapon in hand, in violation of Consumer Protection Law.

1110. After Craig Kilborne stated the above, Craig Kilborne stated further "I am in a really good mood," in violation of Consumer Protection Law.

1111. Any reasonable person would conclude that the above statements made by Craig Kilborne constitute a threat against the life of the Plaintiff, in violation of Consumer Protection Law.

1112. On May 9, 2003 Plaintiff had brought documentation to another attorney's office in Nashua, N.H. to request that he represent her. The attorney refused to represent Plaintiff in addition to all other attornies whom Plaintiff had sought out.

1113. On May 9, 2003 at 2:00 a.m. Craig Kilborne had stated "Get up off your Asses" during the Craig Kilborne late night show. Craig Kilborne added "She is going to sue us for Twenty Three Million ($23,000,000) Dollars," in violation of Consumer Protection Law.

1114. During January, 2003 Craig Kilborne stated on the Craig Kilborne late night show "She is going to Sue Us for Twenty-Three Million ($23,000,000) Dollars." Plaintiff had stated, in anger, and while Plaintiff had been alone in her Home that she would "...Sue them for Twenty-Three Million ($23,000,000) Dollars" a short time before Craig Kilborne made the above statement. Therefore, the above quote confirms Plaintiff's accusation against Defenda(s) that Plaintiff's home had been under surveilance, ongoing without Plaintiff's consent, and that the Defendants are and had involvement with Business Associates in a Consiracy to Invade the Privacy of Plaintiff, in violation of Consumer Protection Law.

1115. Immediately before the above statement had been made by Craig Kilborne, Plaintiff had begun to type the herein referred to Lawsuit in which Plaintiff named

David Letterman , Craig Kilborne and Channel Four Television as co-defendants. Plaintiff had typed the amount of request for damages in the amount of Twenty Three Million ($23,000,000) Dollars, the obvious source of Craig Kilborne's statement, in violation of Consumer Protection Law.

1116. On the very evening immediately after Plaintiff's February 10, 2003 preparation of the beginning of this herein referred to Lawsuit, and when Plaintiff named David Letterman as Defendant, and when Plaintiff inserted the request for "damages" amount of twenty-three million dollars, David Letterman stated during that evening's televised airing of his late night program "You temperamental Bitch," in violation of Consumer Protection Law.

1117. The above is simply a repetition of similar incidents which have been done against Plaintiff, in an obvious attempt to intimidate Plaintiff against filing this lawsuit, in violation of Consumer Protection Law.

1118. Plaintiff, thereupon, attempted to obtain other legal counsel to represent her, all subsequent attornies also refused to represent Plaintiff.

1119. Plaintiff had stated out loud in the "privacy" of Plaintiff's Home "I need help all right - from both the FBI and the CIA."

1120. Charles Laquidara had immediately threatened Plaintiff in stating "If you do, you will pay dearly" on December 18, 1998 at 5:00 p.m. on the WZLX radio program of which he was the disc jockey in obvious reference to the Plaintiff, in violation of Consumer Protection Law.

1121. Several months after April, 2000 Plaintiff had been advised by an attorney that Charles Laquadeiras had "retired" after Stock Market Crash and after all Losses above to Plaintiff and Plaintiff's family and had been advised that he had moved to "Hawaii".

1122. Plaintiff believes that Charles Laquidara may have been Fired in the Radio Station's attempt to remove themselves from blame.

1123. In addition to the above, the following statements made by David Letterman on the David Letterman Show and Craig Kilborne on the Craig Kilborne Show, both late night talk show hosts, and both on CBS television, Channel 4 locally are of critical importance when considered in the light of the above incident involving Howard Stern, in violation of Consumer Protection Law.

1124. During recent years and during every evening performance of the David Letterman Show, and immediately after the Opening, David Letterman would read "Ten Things you should Know...," beginning from Number 10 and reading them in reverse to the most important item, number 1 on the List. Invariable, these

Statements were directed towards the Plaintiff's life, subtly camoflauged, and usually very insulting to Plaintiff. The above had been dispensed with during the past approximate year during which Plaintiff attempted, once again, to document a lawsuit against Defendants, in violation of Consumer Protection Law.

1125. Plaintiff has accessed a web site on the Internet of the "David Letterman Show" which contained one area which was entitled "<u>Stupid Mamma</u>" Jokes during 2004, he web site refers to Plaintiff and causes Defamation of Plaintiff's Character, in violation of Consumer Protection Law.

1129. During January, 2002 David Letterman stated "How would you like to spend the Weekend watching 'Ma'" which was said in sarcasm, and from which statement any reasonable person would conclude that David Letterman had admitted he had been "watching" Plaintiff, in violation of Consumer Propection Law.

1130. For the fact that on March 2, 2003 David Letterman continued and remarked that someone "in his office was a Mafia Guy" and that this 'Mafia Guy' was "shaking him down", above statement about "Mafia Guy" was an indirect threat against Plaintiff, in violation of Consumer Protection Law.

1131. On January 2, 2003 the David Letterman Show re-ran an earlier showing that was aired during Thanksgiving week of the year 2003. Remarks about "eating turkey" also had been made. Plaintiff had been away during Thanksgiving week with family members and had not viewed any television. Early in the program David Letterman stated "lunatic, idiot, imbecile", totally irrelevant to other remarks having been made and undoubtedly directed against Plaintiff, in violation of Consumer Protection Law.

1132. During the first week of December, 2003 and upon Plaintiff's return to New Hampshire after Thanksgiving week, and after having spent the week attending a Cruise with Plaintiff's son and his family, Craig Kilborne made the Statement "Handsome Rules" on his late night television program. He looked directly at the camera and said nothing else before or after the remark, in violation of Consumer Protection Law.

1133. Finally, on or about the Summer of the year 2003, several of the above named Defendants made the following descriptive remark in the media, in violation of Consumer Protection Law:

    David Letterman had stated "It's a Practical Joke" during the David Letterman Show.
    Craig Kilborne had stated "It's a Practical Joke" during the Craig Kilborne Show.

1134. Plaintiff states that a Practical Joke has a market value of Five Dollars, not several million dollars, in Plaintiff and Plaintiff's son's losses.

1135. The above occurred a few months after Plaintiff typed "Lawsuit" in which Plaintiff had requested Court to order Judgement against Defendants in the amount of "...Twenty Three Million Dollars...".

1136. For Defendants involvement in a conspiracy to victimize Plaintiff with other Media Personalities who, on various occasions identified Plaintiff in the Media by referring to or describing the following during radio broadcasts and during televised broadcasts: Plaintiff's automobile License Plate (999 RAG), Plaintiff's automobile in the Media, the Town or City in which Plaintiff resided, interior and exterior of Plaintiff's home, Plaintiff's name (Gilroy, Mark Gilroy), Plaintiff's physical appearance ("Did you ever see anything so big?", referred to Plaintiff's occupation in the Media, referred to Plaintiff's real estate ventures ("She's crazy", "Wakefield"), referred to Plaintiff's paintings in the Media, referred to Plaintiff's state of mind ("She's crazy," "She is very intelligent," "They say she is easily manipulated", "Where can I find a woman like that?"), Plaintiff's lifestyle ("She lives like a hermit", Plaintiff's clothing (Comedy Television Channel - copied design of Plaintiff's blouse which resembled "Gruenica" on a 20 ft stage backdrop to resemble a painting in order to defame Plaintiff's reputation as a Painter), in violation of Consumer Protection Law.

1137. Carter Allen, Disc Jockey, WBCN Radio had stated during 1998 to 1999 on the WBCN radio program on which he was the disc jockey "There is so much stuff going on that you would not believe me if I told you", in violation of Consumer Protection Law.

1138. Mark Parento, Disc Jockey, WBCN Radio of the Mark Parento Show, Mark Parento stated in obvious reference to the Plaintiff on November 18, 1996 during the WBCN Radio program of which he had been the disc jockey "Mark Gilroy", in violation of Consumer Protection Law.

1139. "Ten Things you should know" was a repeated daily theme of the Charles Laquidara radio programs during all of the 1990's and early 2000, undeniably the quotations of which had been pointing to Plaintiff, in violation of Consumer Protection Law.

1140. Charles Laquidara had stated in obvious reference to the Plaintiff during 1999 on the WZLX radio program of which he was the disc jockey "The most hated woman in Rock 'n Roll", in violation of Consumer Protection Law.

1141. Charles Laquidara had stated during 1999 on the WZLX radio program of which he was the disc jockey "No matter where you go, you will never have any Privacy", in violation of Consumer Protection Law.

134

1142. Charles Laquidara had stated during 1999 on the WZLX radio program of which he was the disc jockey "If you go into any restaurant in Florida, and lean over the Flowers in the vase on the table, you will not have any Privacy", in violation of Consumer Protection Law.

1143. Charles Laquidara had stated during 1999 on the WZLX radio program of which he was the disc jockey " It's Discrimination" repeatedly on the Radio, in violation of Consumer Protection Law.

1144. Charles Laquidara had stated during 1999 on the WZLX radio program of which he was the disc jockey "It's insidious", in violation of Consumer Protection Law.

1145. When Charles Laquidara had stated "You are going Down" during 1999 on the WBCN radio program of which he was the disc jockey, the above Statement was intended as a threat against Plaintiff, in violation of Consumer Protection Law.

1146. When Charles Laquidara had stated during 1999 and 2000 and 2001 on the WZLX radio program of which he was the disc jockey "It's Blackmail," the above Statement was intended as a threat against Plaintiff, in violation of Consumer Protection Law.

1147. When Charles Laquidara had stated "They are either going to Make You or Break You," during 1999 on the WZLX radio program of which he was the disc jockey, the above Statement was intended as a threat against Plaintiff, in violation of Consumer Protection Law.

1148. Charles Laquidara had stated during 1999 on the WZLX radio program of which he was the disc jockey "The first thing you need to do is to get rid of the Intruder, " in violation of Consumer Protection Law.

1149. During December, 1999 Plaintiff had the radio turned on to WZLX and to Charles Laquidara radio program while Plaintiff had been researching the real estate in Wakefield, Massachusetts, in violation of Consumer Protection Law.

1150. Charles Laquidara immediately made the statement "Wakefield" on WZLX radio, the remark about "Wakefield" having been totally out of context with any other statements made during the radio broadcast, in violation of Consumer Protection Law.

1151. Any reasonable person would conclude from the above that Plaintiff's Privacy had been being invaded and that Defendants had been involved in a Conspiracy with Charles Laquidara, among other Media Personalities, to invade Plaintiff's Privacy, among all other illegal activities referred to in all Counts herein,

in violation of Consumer Protection Law.

1152. Plaintiff had, in fact, contacted the F.B.I. and C.I.A. during 1999 to no avail, having been advised that resources are not available to such agencies to assist private citizens.

1153. Defendants have been involved in a conspiracy to victimize Plaintiff with other Media Personalities who made reference repeatedly to an article which appeared in Art Forum magazine, issue November, 1987, in which Plaintiff had illegally and without Plaintiff's permission been photographed, said photograph of Plaintiff's face being displayed in a doctored photograph and affixed to the clothed body of another woman, with the explicit intention of showing the Plaintiff in a most derogatory light, in violation of Consumer Protection Law.

1154. The entire intention of said Media Personalities and of other Media Personalities with whom the Defendants were involved had been to draw attention to the Plaintiff, to identify the Plaintiff to the Media Audience, all of which activities were illegal because Plaintiff is and was a private Individual and not a Public figure, having done to with the express willful intention of causing Defamation of Character and Humiliation to the Plaintiff, in violation of Consumer Protection Law.

1155. In regard to the above, Charles Laquidara had stated "They have been trying for 20 years to get you and they finally did. And I am so glad." The statement clearly identifies Defendants intentions in regard to Invasion of Plaintiff's Privacy and all of the above references to Plaintiff that had been made in various segments of the Media, in violation of Consumer Protection Law.

1156. Photographs, which Plaintiff had taken of "Details" of her paintings for future reference as a learning tool, had been stolen from Plaintiff's Home, in violation of Consumer Protection Law.

1157. Plaintiff, upon viewing the David Letterman Show on one evening soon thereafter, saw during the David Letterman Show that the above "Details" of photographs of Plaintiff's paintings had been affixed to Wine Bottles, said Wine having been advertised in television commercials, presumably for the purpose of selling the Wine to the general public on the David Letterman Show, in violation of Consumer Protection Law.

1158. On December 2, 1998 on television Channel 4, while Plaintiff resided in Newton, Massachusetts, Craig Kilbourne had stated "Give it Away for Free", pointing directly at Surveilance of Plaintiff, demonstrating his involvement in Conspiracy to Invade Plaintiff's Privacy, in violation of Consumer Protection Law.

1159. Plaintiff had been typing the "Book" in Plaintiff son's room, having

136

presumed that Plaintiff could work in other rooms and areas of Plaintiff's home in order to interfere with the Invasion of Privacy which had been occurring in Plaintiff's home and Plaintiff's life.

1160. Plaintiff thereupon discovered that Plaintiff could not avoid the Invasion of Plaintiff's Privacy by working in other rooms of Plaintiff's home, in violation of Consumer Protection Law.

1161. Defendants directly attacked against Plaintiff and for their involvement with other Media Personalities in the above referred conspiracy to vicimize Plaintiff which had caused and continues to cause immeasurable harm, suffering, and irreversible damage to Plaintiff, in violation of Consumer Protection Law.

1162. On July 17, 2002 a San Francisco based source of Talk Show Host's Television made the statement the "Golden Goose", a statement and description undoubtedly of Plaintiff, in violation of Consumer Protection Law.

1163. Any reasonable person can easily conclude that the above reference to "Golden Goose" was due to all other articles of Value, all business papers, all Profit and Loss Statements, all Plaintiff's typewritten Fine Arts notes that had been stolen from Plaintiff's home, in violation of Consumer Protection Law.

1164. During the year 2002, as Plaintiff watched CNN Television and Stock Market Analysts' program, the Panel Discussion Group's Leader stated "...IT'S THE FORMULA, STUPID ..." in violation of Consumer Protection Law.

1165. The above statement, considered in conjunction with all of Plaintiff's quotations of Defendants named herein, among other Media Personalities, causes it to be obvious to the Court that the Defendants named herein are guilty of Invasion of Privacy of Plaintiff and thereby, also responsible for all Losses suffered by Plaintiff as a direct result of such damages caused to Plaintiff, in violation of Consumer Protection Law.

1166. Plaintiff hereby stipulates that if the Defendants, David Letterman, Craig Kilborne and CBS, Inc.Television, had not Invaded Plaintiff's Privacy and had not committed all violations and illegal activities against Plaintiff as herein stated, and had not committed the breaches against Plaintiff during numerous years, other third parties who perpetrated attacks would never have done so, in violation of Consumer Protection Law.

1167. Plaintiff has spent numerous thousands of hours in Plaintiff's attempts to guard her Privacy, to safeguard her Home, and to safeguard her commercial premises in performing the following, all to no avail: to learn identity of persons who have broken into her Homes in both Massachusetts and New Hampshire, to protect her homes from Individuals' unlawfully enterring her homes, including having spent

numerous hundreds of dollars at each home in the installation of "Burgular Proof Locks", including having attempted to have installed surveilance equipment to her home, nailing all windows shut in her Massachusetts residence when Plaintiff discovered that simply having Locks on all Windows had no effect in keeping Individuals from unlawfully entering her home, in having purchased many combination Steel Floor Safes in which Plaintiff attempted to hide and to store Plaintiff's personal and business property, yet thereafter having found contents of various Safes had been Stolen.

1168. Plaintiff had on several occasions employed licensed Private Investigators to apply their equipment to searching for Surveilance Equipment in her home on several occasions and at costs of thousands of dollars to Plaintiff, to no avail, with the exception that said Detectives found that it appeared that signals were being transmitted to "Radio Stations".

1169. Plaintiff hereby states that Plaintiff has spent Thousands of Hours in Searching the Internet in her attempts to uncover the above referred to Victimization of Plaintiff and of some 30 years of Plaintiff's Life and has been unable to find said documentation on the Internet. Undoubtedly, this is due to Plaintiff's lack of Knowledge in this realm.

1170. Plaintiff hereby contends that it is not a requirement that any United States Citizen must be knowledgeable in Internet usage or in any other Media applications in order for Plaintiff or any other United States Citizen to not be Deprived of Plaintiff's "Unalienable Rights" as a United States Citizen.

1171. The Defendants committed willful, malicious and deceptive illegal activities which interferred with the Plaintiff's Constitutional Rights of Life, Liberty and the Pursuit of Happiness, thereby denying Plaintiff her Unalienable Rights as a United States Citizen, and for said illegal actions continuing during numerous years and ongoing to date, in violation of Consumer Protection Law.

1172. In regard to the above, Charles Laquidara had stated "They have been trying for 20 years to get you and they finally did. And I am so glad," and the statement clearly demonstrates the validity of Plaintiff's claims against the Defendants named herein, Charles Laquidara statement clearly identifing Defendants intentions in regard to Invasion of Plaintiff's Privacy and all of the above references to Plaintiff that had been made in various segments of the Media, in violation of Consumer Protection Law.

1173. Plaintiff had had enormous amount of Equity in Plaintiff's two Massachusetts properties due to some 35 years accummulated Equity, minimum equity of at least One Million Dollars ($1,000,000) during 1994-1999.

1174. Every commercial property which Plaintiff attempted to purchase had

immediately been sold, instead, to other parties, regardless of Plaintiff's Financial Status, undeniably, various Media personalities having been occupied in stealing Plaintiff's potential purchases from Plaintiff, in violation of Consumer Protection Law.

1175. Charles Laquidara had stated "Rehab sucks" in obvious reference to the Plaintiff during 1999 on the WZLX radio program of which he was the disc jockey, the statement having been made immediately after Plaintiff had found and visited a valuable property in Dover, New Hampshire, in violation of Consumer Protection Law.

1176. The Sellers of the above referred to commercial real estate claimed to have spent $1,000,000 in rehabilitation of each of two buildings of the premises, yet had offerred the premises "For Sale" for only $675,000 for each of two Buildings.

1177. Plaintiff had driven to Dover, New Hampshire in order to view the premises, some 100 miles from Plaintiff's home. immediately thereafter, the Commercial property had been sold to another Buyer, in violation of Consumer Protection Law.

1178. Immediately after Plaintiff had discoverd the above Property listed "For Sale" in the Boston Globe and had immediately contacted the Real Estate Broker, Charles Laquidara was not on the air for a few days and that the statements had been made by members of the radio staff that "Charles Laquidara had gone to Maine on Vacation", in violation of Consumer Protection Law.

1179. Charles Laquederas had been exceptionally happy and laughing during the time frame while Plaintiff had been investigating the Dover Property whenever he had been on radio air time, in violation of Consumer Protection Law.

1180. "She's crazy." Charles Laquidara had stated in obvious reference to the Plaintiff during 1999 and during the above referred to time frame when Plaintiff had discovered the above referred to Commercial Real Estate in Dover, New Hampshire, on the WZLX radio program of which he was the disc jockey, 300,000 listeners each day at any given time, in violation of Consumer Protection Law.

1181. Plaintiff herein acuses Charles Laquidara of willfully and maliciously destroying Plaintiff's life for the benefit of herein named Defendants and/or for his own personal financial benefit, in violation of Consumer Protection Law.

1182. Why had Charles Laquidara found it necessary to personally conduct an Auction of his personal residence in the approximate amount of some $700,000, and to sell probably for below market value, and why not employ the normal route of employing a Real Estate Broker, unless Charles Laquidara was in a hurry to obtain some quick Cash in order to purchase the Commercial Real Estate which Plaintiff had discovered in Dover, New Hampshire, in violation of Consumer Protection Law.

1183.  Plaintiff herein acuses Charles Laquidara of willfully and maliciously interferring in Plaintiff's Quiet Enjoyment and Invasion of Plaintiff's Privacy in order to personally financially benefit from Plaintiff's research which Plaintiff laborred long and hard to complete, in violation of Consumer Protection Law.

1184.  Given Charles Laquidara and other Media Personalities' and other disc jockeys enormously high annual salaries, it certainly had been unnecessary for any and all Defendants and Media Personalities to have "Stolen" information from Plaintiff and / or purchased commercial Properties which Plaintiff had attemted or intended to purchase from Plaintiff which represented Plaintiff's enormous labor expended in working alone and in Plaintiff's home, in violation of Consumer Protection Law.

1185.  Given Charles Laquidara and other Media Personalities' and other disc jockeys enormously high annual salaries, each and every Defendant and Media Personality certainly had it within their personal financial means to employ Financial persons and companies to perform any needed Research for them, whether in the area of Real Estate Investments or in any other capacity of financial investments, in violation of Consumer Protection Law.

1186.  Plaintiff herein accuses Defendants named herein of purposefully and willfully destroying Plaintiff's life for the herein named Defendants' personal Financial Benefit , in violation of Consumer Protection Law.

1187.  Because the Defendants acted Willfully, Deceptively, Maliciously, Interferred with the Plaintiff's Inalienable Rights, Invaded the Plaintiff's Privacy, were involved in a Conspiracy to Invade Plaintiff's Privacy, unmercifully Harassed Plaintiff during innumerable years, and ongoing to this date, Plaintiff herein named demands that this Honorable Court order Defendants herein named to pay <u>Plaintiff Treble damages, but in no event less than double damages,  plus 12% Interest,</u> Compounded Annually, plus reasonable Attorney Fees and Court Costs.

1188.  Plaintiff makes reference to and incorporates as if stated herein State of New Hampshire Laws Annotated, Consumer Protection Law, in addition to all applicable federal laws and U.S. Constitution.